IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LYNDA ZAVESKY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL[1], | : | |
| Commissioner of Social Security | : | NO. 18-8989 |

O P I N I O N

JACOB P. HART                                                                                           DATE:  January 6, 2020
UNITED STATES MAGISTRATE JUDGE

      Lynda Zavesky brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). She has filed a Request for Review to which the Commissioner has responded. As discussed below, Zavesky's Request for Review will be denied, and judgment granted in favor of the Commissioner.

I.     Factual and Procedural Background

      Zavesky was born on February 8, 1961. Record at 170. She completed the tenth grade in school. Record at 193. She worked for many years as a payroll accounts clerk for a limousine company. Record at 47, 193. On November 25, 2015, Zavesky filed an application for DIB. Record at 170. In her application, she alleged disability since March 16, 2015, as a result of degenerative disc disease and bulging discs in her lumbar spine. Record at 170, 192.

      Zavesky's application was denied initially and upon reconsideration. Record at 86, 93. She then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 117. A hearing took place on June 20, 2017. Record at 28. On September 8, 2017, however, the

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. Pr. 25(d); and see 42 USC §405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security … .").

ALJ issued a written decision denying benefits. Record at 16.  The Appeals Council denied Zavesky's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner.  Record at 1.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1).  As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i)  At the first step, we consider your work activity if any.  If you are doing substantial gainful activity, we will find that you are not disabled.  (ii) At the second step, we consider the medical severity of your impairment(s).  If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.  (iii) At the third step, we also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.  (iv).  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v). At the fifth and last step, we consider our assessment of your residual functional capacity

>and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

III.     The ALJ's Decision and Zavesky's Request for Review

The ALJ determined that Zavesky suffered from the severe impairments of degenerative disc disease of the lumbar spine, lumbar radiculopathy, scoliosis, and right-sided bursitis. Record at 18. He found that none of these impairments and no combination of impairments met or medically equaled a listed impairment. Record at 19.

The ALJ found that Zavesky retained the residual functional capacity ("RFC") to engage in sedentary work, with only occasional climbing of ramps and stairs and no climbing ladders, ropes, and scaffolds; and occasional balancing, stooping, kneeling, crouching and crawling, and occasional pushing and pulling with the right lower extremity. Record at 19. She also required a sit/stand option which would not require her to be off-task for more than 10% of the workday. Id.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found at the fourth stage of the sequential evaluation that Zayesky could return to her past relevant work as actually performed and as usually performed. Record at 22. He concluded, therefore, that Zavesky was not disabled. Record at 23.

In her Request for Review, Zavesky has raised the following arguments: (1) the ALJ erred in finding that her back condition did not meet or medically equal Listing 1.04; (2) the ALJ mischaracterized the findings of the independent examining physician; (3) the ALJ's RFC assessment is not supported by substantial evidence; (4) the ALJ erred in failing to consider her need for a cane and a need to elevate her feet; (5) the ALJ did not adequately assess her claims of pain; and (6) the ALJ erroneously failed to determine whether the vocational expert's testimony was consistent with the Dictionary of Occupational Titles ("DOT").

IV.   Discussion

A.   Listing 1.04

In order to meet listed impairment 1.04, and qualify for a finding of disability, a claimant must demonstrate the existence of a disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root or the spinal cord, as well as:

> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every two hours; or
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.[2]

20 CFR Pt 404, Subpart P, Appendix 1 at §1.04.

---

[2] An inability to ambulate effectively is defined as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities. 20 CFR Pt. 404, Subpart P, Appendix 1 at §1.00B2b.

The ALJ wrote that Zavesky did not meet Listing 1.04 because "the medical evidence does not support a finding of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis." Record at 19.

The ALJ's findings regarding Listing 1.04 do not appear to be accurate. On March 30, 2016, Benjamin Cortijo, MD, a reviewing agency expert, wrote that Zavesky did not meet Listing 1.04 because her physical examination findings were "not consistent with nerve root compression." Record at 73. However, he also described Zavesky as suffering from "radiculopathy." Id. Indeed, EMG testing conducted on May 5, 2016, revealed "moderate right L5 radiculopathy." Record at 502. Yet, lumbar radiculopathy is a result of nerve root compression. See Https://ncbi.him.nih.gov/books/NBK430837/ ("Lumbosacral radiculopathy is a term used to describe a pain syndrome caused by compression or irritation of nerve roots in the lower back") (visited December 19, 2019); and https://emoryhealthcare.org/orthopedics/lumbar-radiculopathy.html (entitled: "Lumbar Radiculopathy (Nerve Root Compression)") (visited December 19, 2019).

What is more, a March 1, 2015, MRI report found: "Severe right neural foraminal and right lateral recess stenosis" at L4-5 and "moderate left neural foraminal and left lateral recess stenosis" at L4-5, as well as mild left lateral recess stenosis as L2-3. Record at 423. Because the ALJ mentioned these findings in his decision, it is not clear why he would negate them at Stage 3 of the sequential analysis. Record at 21.

Nevertheless, despite the fact that Zavesky clearly suffered from nerve root compression and lumbar spinal stenosis, the evidence does not show that her conditions reached the level of severity required to meet Listing 1.04.

First, in order to meet the listing on the basis of radiculopathy, Zavesky would have had to suffer from motor loss, which is described as muscle weakness or muscle atrophy. On March 16, 2016, however, when Zavesky was examined by independent consulting physician, Marc Weber, MD, he found that she had no muscle atrophy in the lower extremities. Record at 485. He found full, 5/5 muscle strength in Zavesky's right leg, and in her left ankle and foot. Record at 485, 487. Dr. Weber found that Zavesky had only 3-4/5 strength in her left hip and knee. Id. However, on March 3, 2017, Nilay Shah, MD, found 5/5 strength in both legs, with normal muscle tone. Record at 542. On October 8, 2015, neurologist Michael G. Kaiser, MD, described "5/5 strength throughout both lower extremities" except for 4/5 strength in the right foot. Record at 349. Thus, if Zavesky had any muscle weakness, it was mild. She had no atrophy.

Further, despite the fact that Zavesky had "severe right lateral stenosis and foraminal stenosis at L4-5" and mild stenosis at L2-3 and L3-4, a physician at Premier Orthopaedics and Sports Medicine, P.C., noted on April 27, 2017, that she had a normal gait and station, and walked "unassisted." Record at 538. Dr. Shah also found that Zavesky had a normal gait. Record at 542. Dr. Kaiser described Zavesky's gait as "stable." Record at 349. Dr. Weber wrote that Zavesky was able to "ambulate independently without an assistive device", although she walked with a "forward flexed posture." Record at 484-5. Even Kiran Vadada, MD, a treating orthopedist who authored a January 19, 2016, report finding that Zavesky was disabled (as discussed below) indicated that she did not use a cane or other assistive device to walk. Record at 439. Thus, Zavesky did not show the "inability to ambulate effectively" which Listing 1.04 requires for a finding of disability caused by stenosis.

Accordingly, even though the ALJ's finding at stage three were faulty, it is clear that remand in this case would not result in a determination that Zavesky met a listing.

6

B.    <u>Dr. Weber</u>

The ALJ wrote in his decision:

On March 16, 2016, the claimant underwent a consultative examination by Dr. Weber, who noted that the claimant ambulated independently without an assistive device. On physical examination, the claimant appeared to be in no apparent distress, she appeared to be comfortable during the examination. There was tenderness over the lower lumbar paraspinal muscles on the right but her muscle strength was 5/5 throughout her extremities. Left hip flexion was 3/5 and left knee extension was 3/5. Sensation was decreased throughout the left lower extremity. Straight leg raising was positive on the right side at 30 degrees in the supine and seated position.

Record at 21.

Citing the above page of the record, Zavesky complains that "the ALJ referred to the consultative examination report of Dr. Weber but erroneously indicated that there was no reflex, motor function, or motor weakness found." Brief at 11. She argues that Dr. Weber's findings showed listing level severity. Zavesky's argument is somewhat inconsistent with what the ALJ actually wrote: he did not mention motor function or reflexes. Also, Dr. Weber did not find significant motor function abnormality. He wrote: "the range of motion in the lower extremities is within functional limits." Record at 485.

It is true, however, that the ALJ did not mention Dr. Weber's finding of reflex loss in both ankles. Record at 485. Further, the ALJ was mistaken in concluding that Dr Weber found full strength "throughout her extremities." Instead, Dr. Weber's entries on a Passive Range of Motion Chart clarify that he found Zavesky to have reduced strength in the right hip and knee. Record at 487.

Nevertheless, even if this matter were remanded for the ALJ to correct these errors, this would not result in Zavesky meeting Listing 1.04. As discussed above, examinations conducted both before and after Dr. Weber's found Zavesky to have normal strength in both legs, and the ability to walk without assistance.

7

C.      The RFC Assessment

Zavesky maintains that the ALJ's erred in disregarding the opinion of Dr. Vadada and that of his neurologist, Mostafa El Khashab, MD. As mentioned, Dr. Vadada completed a medical source statement dated January 19, 2016. Record at 437. In it, he indicated that he had treated Zavesky once every month or two since April, 2015. Id. He wrote that she suffered from lumbar radiculopathy causing pain, numbness and weakness in the lower back and right leg. Id.

Dr. Vadada indicated that Zavesky could only sit for thirty minutes at a time, and for less than two hours in an eight-hour workday. Record at 438. She could only stand for twenty minutes at a time, and could stand/walk for less than two hours in a workday. Id. This, if credited, would compel a finding of disability. Dr. Vadada also found that Zavesky could never twist, stoop, crouch, or climb ladders or stairs. Record at 43.

The ALJ, however, wrote of Dr. Vadada's report: "I accord little weight to this opinion in view of the examination findings showing that the claimant's gait has been normal for the most part, without the need for an assistive device, and examination findings showing normal strength throughout her extremities." Record at 22.

Zavesky argues that the ALJ erred in failing to cite any specific medical evidence contradicting Dr. Vadada's report. Nevertheless, as discussed above, even Dr. Vadada noted that Zavesky could walk without an assistive device, as did Dr. Weber. Record at 439, 484. Dr. Shah, and the doctor at Premier Orthopaedics described her gait as normal. Record at 349, 538, 542. Zavesky was also found to have normal strength in her legs in several examinations over the relevant time period. Record at 349, 542.

8

Before discussing Dr. Vadada's report, the ALJ had given page citations to the findings from the Premier Orthopaedics and Sports Medicine examination, and the examinations by Dr. Shah, even though he did not name the care providers. Record at 21. He also noted that Zavesky was found to have a steady gait with the use of a back brace on June 2, 2016. Record at 21, 496. As above, he wrongly reported that Dr. Weber found 5/5 strength in all extremities. Nevertheless, as is also noted, Dr. Weber did find Zavesky's range of motion in her legs to be "within functional limits." Record at 21, 485. Thus, the record contained adequate evidence supporting the ALJ's rejection of Dr. Vadada's functional findings, and he cited most of it.

As for Dr. El Khashab, he completed a Medical Source Statement dated September 30, 2016. Record at 510. He wrote that Zavesky's symptoms included back pain radiating to her right leg, and recently to her left leg, and some generalized 4/5 weakness. Record at 507. He wrote that walking and standing exacerbated Zavesky's leg pain. Id. He also indicated that she had a reduced range of motion and sensory loss in three toes of her right foot. Record at 508. He declined to give a functional assessment. Record at 508. When asked whether Zavesky's impairments were likely to produce "good" and "bad" days, he checked off "Yes" and added: "possibly." Record at 510.

The ALJ wrote: "I … accord little weight to the opinion of Dr. Khashab that the claimant's impairments can possibly produce good days and bad days as no physical functional assessment was provided." Record at 22. Here, again, Zavesky argues that the ALJ failed to cite countervailing medical opinions or evidence.

The ALJ did not, however, reject Dr. El Khasab's findings that Zavesky suffered from back pain which radiated into her legs, or that she was limited in walking or standing. If he had, he would not have conceded that she suffered from severe degenerative disc disease and lumbar

9

radiculopathy (as well as scoliosis), or limited her to less than the full range of sedentary work. The one comment mentioned by the ALJ, that Zavesky would "possibly" have good and bad days is too ambivalent to help the ALJ determine whether Zavesky's pain and other symptoms were disabling. It contemplates that she might have good and bad days… or she might not. The ALJ did not err in rejecting this statement for the purposes of his decision.

D.        <u>Zavesky's Need for a Cane and to Elevate her Feet</u>

At her hearing, Zavesky testified that a doctor had prescribed a cane for her use, and had advised her to elevate her feet while seated. Record at 38, 39. In a brief paragraph, Zavesky argues that the ALJ erred in failing to consider the additional restrictions her use of a cane and need to elevate her feet would impose upon her RFC. However, she has not cited to any treatment note prescribing these measures, much less has she established that they were medically necessary. To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need, and describing the circumstances in which it is needed. SSR 96-9p, <u>and</u> <u>see</u> <u>Howze v. Barnhart</u>, 53 Fed. Appx. 218, 221 (3d Cir. 2002).

On the contrary, Dr. Vadada clearly indicated in 2016 that Zavesky did not require the use of a cane, and did not need to elevate her legs "with prolonged sitting." Record at 439. Dr. Weber also noted that Zavesky did not use a cane. Record at 484. Dr. El Khashab declined to opine on these issued. Record at 500. As recently as April 27, 2017, three months before her hearing, it was noted that Zavesky walked "unassisted." Record at 538. Zavesky has not, therefore, shown that she had a medical need to use a cane or elevate her feet which would have warranted inclusion in the RFC assessment.

E.        <u>The Pain Assessment; Zavesky's Testimony</u>

Zavesky maintains that the ALJ erred in failing to evaluate her claims of pain in accordance with the applicable rules and rulings. She first maintains that the ALJ did not adequately analyze "medical signs and laboratory findings" as required by 20 CFR §404.1529 and SSR 96-7p. However, the ALJ not only discussed the medical evidence of record, including the results of EMG and MRI testing, he went on to conclude that this evidence showed that Zavesky suffered from medically determinable impairments which would be reasonably expected to produce her alleged symptoms. Record at 20.

Indeed, the ALJ credited Zavesky's representations regarding her own pain and other limitations to the extent that he limited her to less than the full range of sedentary work. He did not, however, find that the rest of the record supported her claim that she was fully disabled. Record at 20. As above, the record contained substantial medical and other evidence which supported the ALJ's conclusion that Zavesky was capable of some work.

The Commissioner has also noted that, at the hearing, Zavesky was asked: "Now if your former employer called you back and asked you to come back in to work for that company, do you think you'd be able to go back?" Record at 36. She responded: "If they can deal with me sitting for a certain period of time and then having to get up to walk, and then sitting back down for a certain time, getting back up, I would have no problem." <u>Id</u>.

A few minutes later, the ALJ asked: "So if there was a job where you can, you know, sit for a half hour, stand for a half hour, sit for half an hour, do you think that, that's a job that you might be able to perform?" Record at 38. Zavesky replied: "Probably could, yes."

The ALJ did not rely on the above-cited testimony in his decision, possibly because of later testimony from Zavesky that she could not work during the times she would "get up to walk" and that she had frequent absences from her prior job. Record at 38-9. However, the ALJ's conclusion that she was capable of sedentary work with a sit/stand option, and could therefore return to her prior work, is clearly consistent with Zavesky's testimony that she would have "no problem" with such a job.

F.   Social Security Ruling 00-4p

Finally, Zavesky argues that the ALJ erred in failing to elicit evidence from the vocational expert resolving the conflict between her testimony and the DOT, as required by SSR 00-4p. According to Zavesky, a conflict was created when the vocational expert opined that certain jobs could provide a sit/stand option.

However, the Court of Appeals for the Third Circuit has explained that, because the DOT is silent regarding sit/stand options in job descriptions, there is no conflict with testimony from a vocational expert on that subject which requires inquiry by an ALJ. Sanborn v. Commissioner of Social Security, 613 Fed. Appx. 171, 177 (3d Cir. 2015). Although Sanborn is not a precedential case, its holding has been relied upon frequently. See, e.g., Phillips v. Berryhill, Civ. A. No. 15-5204, 2017 WL 2224931 at *7 (E.D. Pa. May 22, 2017); McNeish v. Saul, Civ. A. No. 18-86, 2019 WL 2542333 at *3 (W.D. Pa. June 20, 2019).

V.  Conclusion

In accordance with the above discussion, I conclude that the decision of the Appeals Council must be affirmed, and judgment entered in favor of the Commissioner.

BY THE COURT:

/s/ Jacob P. Hart

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE